HENRY STOVALL ET AL. *v.* JOHN M. JUDAH.

1. LOST DEED. *Evidence.*

Evidence to establish an alleged lost deed examined and adjudged insufficient.

2. CONSTRUCTIVE NOTICE. *Deed. Trust deed. Record.*

Where a purchaser of land fails to record his deed, but the vendor duly records a deed of trust, given by the purchaser to secure the purchase money, the record of the latter is constructive notice to the trustee and beneficiaries therein of the rights of the purchaser.

3. SAME. *Occupation. Unrecorded deed.*

The open, exclusive, and continuous occupation of land, under an unrecorded deed, is constructive notice to creditors and subsequent purchasers of the occupant's rights.

FROM the chancery court of Chickasaw county, first district. HON. BAXTER MCFARLAND, Chancellor.

Suit by Judah, appellee, against Stovall and others, to confirm title to lands. The decree of the chancery court was in complainants' favor; the defendants appeal. The facts are stated in the opinion.

*Stovall & Williams,* for appellant.

If the court holds, as we contend it must, that the evidence is insufficient to show a reconveyance, then, was the Dundee Mortgage Company an innocent incumbrancer, and John M. Judah an innocent *bona fide* purchaser? We think not. Henry Stovall and his family had been in possession of this land, occupying and cultivating it, for years, and it was a notorious fact in that community that this land belonged to Henry Stovall, and it was known and called the "Stovall Place," taking its name from said Henry Stovall.

The record of deeds of the county showed a trust deed on the land from Henry Stovall to D. T. Payne. The land assessment roll of this county, for 1883 to 1887, show said land assessed to Henry Stovall. The tax collector's stubs show that Henry Stovall paid taxes on the land for these years. The records of the circuit court of the county show an attachment suit for rent of the land against Henry Stovall, in favor of the executor of Payne's estate, for the year 1887, decided for Stovall. The records of M. A. Bean, a justice of the peace for said county, show an unlawful entry and detainer suit, for the possession of the land, against Henry Stovall, and in favor of Payne's executor, and determined against the plaintiff therein.

Now, while all this stir and litigation in reference to this land was pending, there was also begun and consummated negotiations for a loan with Dundee Mortgage Company, at whose sale Jno. M. Judah became the purchaser, with notice, too, at the sale, of said Stovall's claim to said land, etc. Is not any one of the above facts, much less all of them, sufficient to give the said Dundee Mortgage Company notice of appellant's interest or claim to said land, or, at least, sufficient to put said company on inquiry, which, if pursued, would have led to a discovery of the true state of the title to the land? 2 Pom. Eq. Jur., sec. 5; 1 Story's Eq. Jur., sec. 400; *Parker* v. *Foy*, 43 Miss., 266; *Bank of Holly Springs* v. *Pinson*, 58 Miss., 421.

*Houston & Reynolds*, for appellee.

Henry Stovall's possession was like that of the other tenants of W. W. Payne, whom the record shows was owner in 1888. If a party, at or before purchase by himself of land, is a tenant on the land under a lease, his possession afterwards will be presumed to be of the same character, and will not be notice of his deed of purchase. *Claiborne* v. *Holmes*, 51 Miss., 146; *Loughridge* v. *Bowland*, 52 Miss., 546. This presumption will hold until some notorious and unequivocal act of exclusion. 1 Am. & Eng. Enc. L., 238; *Sands* v. *Hughes*, 53 N. Y., 287.

Counsel contend that we had notice of Henry Stovall's unrecorded deed, by virtue of a deed of trust given by Henry Stovall to T. D. Payne in 1881, being recorded. The court will bear in mind that there is no deed from T. D. Payne to Henry Stovall on record, nor a deed from anyone to Henry Stovall. How, then, in looking up the title to the land, was an abstractor to find this deed of trust from Henry Stovall to T. D. Payne? There was nothing in the chain of title to show that Henry Stovall had any right to convey the land—no suggestion to look at index and see if Henry Stovall had ever conveyed it. Might as well require abstractor to examine and see whether Smith, Jones and Brown did not also convey it. So far as chain of title showed, they had as much right to convey it as Henry Stovall. Henry Stovall's deed was not recorded, therefore the deed of trust given by him was not constructive notice. But the testimony established that Stovall conveyed the land back to Payne, and, if so, this ends the case.

STOCKDALE, J., delivered the opinion of the court.

It appears from the evidence in this case, as disclosed by the record, that T. D. Payne, on the twenty-ninth of December, 1881, sold and conveyed to Henry Stovall the southeast ¼ of section 15, township 13, range 4 east, situated in Chickasaw county, Mississippi, for $1,750, to be paid in four annual installments of $437.50 each, commencing November 1, 1882; and that Henry Stovall executed, on the same day, a deed of trust on the same lands, to secure the payment of said four notes to T. D. Payne, B. J. Abbott being trustee, which trust deed was put upon record January 28, 1882, filed January 2, 1882, and Stovall went into or assumed possession of said lands, under said purchase, immediately upon receipt of said deed of conveyance, and held under it.

There is no dispute as to the fact that Henry Stovall was owner of that land, and occupied it as owner during the year 1882, but complainant below (appellee here) contends that, after the

crop of 1882 had been completed, he and T. D. Payne, by verbal agreement, canceled the trade and destroyed the deed from Payne to Stovall, and that some time in 1883 Stovall and wife made a deed of conveyance of said lands to T. D. Payne, which deed was not recorded, but was lost. In support of the execution of said deed, complainant introduced the testimony of W. G. Orr, who testified that his impression was, and, on cross-examination, that his best recollection was, a deed was handed him or to his law partner, Mr. Williams — a deed from Stovall to Payne for the lands in question. Col. Orr further states: " The deed was properly acknowledged before W. A. Badenheimer, mayor of Okolona, Miss., I think. The wife joined in the deed. My impression is Henry signed his name and his wife made a x. But I merely state that as an impression."

On cross-examination Col. Orr stated: " I remember having a conversation with Judge Frazee. . . . I think I further stated to Judge Frazee that I had lately, before that conversation, interviewed Mr. Badenheimer on the subject; that he (Badenheimer) had stated he had no recollection of such acknowledgment. . . . I now state that it is probable that, in that conversation, I might have stated to Judge Frazee that I did not then, with the lights before me, remember that it was acknowledged at all. . . . My best recollection is, that his wife signed it. . . . My recollection is, it (the deed) was on Mr. Williams' desk the last I saw of it."

This was the testimony upon which alone the lost deed was sought to be established. It was not recorded, and never seen nor heard of again, so far as the record discloses, nor did Mr. Payne ever inquire about it, so far as the testimony shows.

R. P. Williams testified that he is the same Williams who was a member of the law firm of McIntosh, Williams & Orr. Says he has no recollection of the southeast $\frac{1}{4}$ of section 15, township 13, range 4, but presumes it is what was sold to Henry Stovall by T. D. Payne; that, during the fall of 1883,.

this firm was employed to abstract the title to T. D. Payne's land, which he wished to sell to Reynolds & Eckford or a syndicate represented by them. "I remember that the title to a part of that land was not good, because he had sold it to Henry Stovall. I have no recollection of Payne clearing up the title. I have no recollection of T. D. Payne saying the sale between him and Stovall had been rescinded, and no recollection of Payne saying he had torn up the deed; have no recollection of any merriment in the office about it; have no recollection of advising Payne what steps to take to get the title out of Stovall, or any member of said firm doing so, as I have no recollection of any such deed. I saw no deed signed by Stovall or by Stovall and his wife."

W. D. Frazee testified: "Some time before the suit of *W. W. Payne* v. *Henry Stovall* was brought, I had a conversation with W. G. Orr in his office, in which Col. Orr said, as I recollect it, that Mr. Payne came into his (Orr's) office and handed him a written document or paper, which he (Payne) said was a deed from Henry Stovall to him. I saw Henry Stovall's name signed to this document, or at least Henry Stovall with a x. Of course I do not know whether Henry signed it or not. I did not read the document. Mr. Orr said he could not say whether the deed was acknowledged at all. Gracey Stovall (the wife) was not mentioned."

On cross-examination he said: "I think my memory is as distinct as a mortal mind could be of a thing that occurred that long ago. I reported it to Mr. Baskin, and have talked about it since." *Ques.* "Is it not possible that Mr. Orr might not have stated that he did not know that the deed was acknowledged at all, in view of the fact that he knew that if the deed was not acknowledged under the law it would be no deed?" *Ans.* "Mr. Orr, in that conversation, did not claim that it was a deed. He stated that Mr. Payne brought him a piece of paper, which he (Payne) said was a deed. Said 'I did not read it.' He said he could not say it was acknowledged at all."

Henry Stovall denies that he ever consented to cancel the deed from T. D. Payne to him, denies that he ever reconveyed the land to Payne. There is nothing to show that T. D. Payne ever demanded rent of him; no act of T. D. Payne where Stovall was charged or credited with rent by T. D. Payne in his lifetime was produced, so far as the record shows. Several witnesses testify, among them a white man, sheriff of the county, that T. D. Payne declared publicly, on several occasions, and up to near the time of his death, that Henry Stovall had paid out for his land, had paid every cent he owed for his land, and used that as an inducement to other negroes to purchase land from him. He attended to Henry Stovall's business, and got separate statements from the sheriff of the amount of taxes paid by him on the land in question, so that he could settle with Henry Stovall. This land assessment was changed, as appears from the assessment roll, from T. D. Payne to Henry Stovall for 1883, which was subsequent to the alleged cancellation of the deed from Payne to Stovall. One witness testifies that he saw that deed in Stovall's possession and read it, as late as 1883.

Taking the evidence altogether, it falls far short of the accuracy and strength required to establish a lost deed that is to divest title of lands; and it would seem that but little if any importance was attached to that paper, as it was not seen nor heard of after Payne handed it in to the office of his attorneys, and Payne never looked after it, and the attorneys lost sight of it, and the complainant did not think enough of it to mention it in his deraignment of title in the bill of complaint.

On the twenty-eighth day of February, 1888, W. W. Payne, executor of the will of T. D. Payne and individually, executed a deed of trust to H. S. Caldwell, trustee, for the Dundee Mortgage & Investment Company, by which trust deed he conveyed 2,455 acres of land in Chickasaw county, Mississippi, to secure ten notes of $1,200 each, due on December 1, 1888, and one annually thereafter. In that trust deed was included (by mistake, as appellant claims) the southeast $\frac{1}{4}$ of section 15, town-

ship 13, range 4 east, making 2,615 acres in the face of the deed. On the twenty-ninth day of January, 1892, the trustee sold all of said lands, and John M. Judah became the purchaser —Stovall being present forbidding the sale of the said southeast ¼, section 15, township 13, range 4 east, claiming that he owned it. On the third of February, 1892, said trustee made a deed of all of said lands to John M. Judah, reciting that he had paid the purchase money, $10,000. On the nineteenth day of December, 1892, W. W. Payne gave Henry Stovall a quitclaim deed to said lands. John M. Judah filed his bill to confirm his title to said southeast ¼ to the May, 1893, term of the Chickasaw county chancery court, first district.

But counsel for appellee—complainant below—contend earnestly that appellee is a *bona fide* purchaser for value, without notice of Stovall's adverse claim, and therefore whatever his right may have been, he lost it by neglecting to record his deed from Payne, and allowing appellee to become purchaser without notice.

Counsel for appellant contend that the record of the deed of trust from Stovall to Payne and Stovall's possession of the lands in question were sufficient notice, and upon these contentions the case depends.

Counsel for appellee insist that T. D. Payne became the owner of the land in question in 1881, and remained owner thereof until his death in 1887. But the testimony establishes beyond question, and it is not disputed, that Stovall owned the land in 1882. Col. McIntosh swears he wrote the deed from Payne to Stovall and the deed of trust from Stovall to Payne, and both were delivered in 1881. Payne admitted this in his talk with Col. Orr, in 1883, only claiming that that deed had been destroyed after the crop of 1882.

Counsel for appellee, in reference to the ability of the recorded trust deed from Stovall to Payne to secure the purchase money of this land, to warn purchasers and put them on inquiry, say: "How, then, was an abstractor to find this deed of

trust? It would be impossible to find this deed in looking up this land." That inquiry is answered and the asseveration refuted by the fact, as shown by the record, that Mr. Williams, of the legal firm of McIntosh, Williams & Orr, when abstracting the lands of Payne, did find that deed, and reported the fact that the title to the lands in question was not good in Payne, having been sold to Stovall, and Col. Orr testifies that fact led Payne to get a deed from Stovall in 1883. Having that trust deed on the public record of the county where the land lay—which they could have seen, and ought to have seen, as Williams did see it—the trustee and the beneficiaries under the trust deed must be charged with notice of it, and with notice of whatever it would suggest to a prudent man. That deed, it seems, would point almost as unerringly to Stovall's ownership as though his deed had been recorded beside it. No man could suppose that a business man like Payne would take a deed of trust on his own land to secure $1,750 and supplies to be advanced.

The will of T. D. Payne did not describe any lands by numbers, but devised his property generally to W. W. Payne. He did not own the land in question, and could not devise it. W. W. Payne testifies that he never intended to put the Stovall land in the Dundee trust deed, and that he informed Trustee Caldwell and John M. Judah, when he went to compromise with them, that the Stovall land was in the deed by mistake, and ought not to be there. There is no allegation that the estate of Payne was insolvent. The trust deed was not prepared by Payne nor his attorneys, but sent out from Memphis to be signed, and he signed without knowing the Stovall land was in it.

Now, as to Henry Stovall's possession. It is not disputed that he was in continuous, open and exclusive possession of the lands in question from 1881 up to the time when this suit was instituted in 1893—more than eleven years—but it is claimed he was in possession as tenant and not as owner. The place

was known as the Stovall place all that time.   W. W. Payne testifies that the place did not get its name from Captain Stovall, a former owner, but from Henry Stovall.   T. D. Payne, who sold it to him, often proclaimed him, Stovall, to be the owner, he having paid for it.   It was assessed to Henry Stovall in 1883, 1884, 1885 and 1886, manifestly, from the testimony, by Payne's consent, and probably by his action attending to it for Stovall.   T. D. Payne claimed no rent in his lifetime.   True, W. W. Payne swears he thought Stovall was a tenant, but said he knew less about that piece than any of his brother's lands; that he knew his brother had sold it to Henry Stovall, but thought Henry had not paid for it; and soon after his brother's death, W. W. Payne proceeded to try the question of ownership or tenancy of Henry Stovall as to that land, and instituted a suit of unlawful entry and detainer in December, 1887, which Henry Stovall defended successfully as owner of said lands.   Later he sued out an attachment for rent, and Stovall defended that suit as owner of the land, and, after several years' litigation, Payne dismissed the suit, giving as a reason that he thought Henry would gain it, and he did not want to spend any more money on it, and gave Stovall a quitclaim deed to quiet his title.

At the time the Dundee trust deed was executed, February 28, 1888, the suit of *Payne v. Stovall*, for rent of the land in question was pending in the circuit court of Chickasaw county, first district, where the land lies.   Stovall had bonded the ten bales of cotton attached, had employed attorneys, and was fighting the suit on the ground that he was owner, and not tenant, and the unlawful entry and detainer suit between the same parties, commenced in December preceding, if not terminated, was pending and defended in the same manner.   So that it seems that Stovall's possession was notorious and adverse at the very time the trust deed was made and when the sale under it was made, as well as open, exclusive, and continuous.

With all the above facts, and more, before them at the very

time the Dundee company was negotiating with Payne for the
loan upon the landed security, and when the trust deed was
executed, for them to claim they were innocent purchasers with-
out notice, and that appearances indicated that Stovall was a
tenant, seems entirely absurd, and especially so for appellee,
when Stovall was present with his attorney and made his claim
known and forbade the sale of the lands in question at the very
sale at which appellee purchased.

The basis of the doctrine of notice is that it is unconscientious
and fraudulent to permit a junior purchaser to defeat a prior
conveyance of which he has knowledge. *Herrington* v. *Allen
& Co.*, 48 Miss., 492.

The testimony as contained in this record so largely prepon-
derates in favor of the proposition that we may regard it as
settled that Stovall purchased and paid for, and received a valid
deed to, the lands in question, and the title remains in him un-
less he lost it by want of notice to the trustee and beneficiaries
of the Dundee trust deed.

"It has been settled by numerous cases in this state, com-
mencing with *Dixon* v. *Lacoste*, 1 Smed. & M., 70, that the
open possession and occupancy of land by the vendee is implied
notice of his right." *Strickland* v. *Kirk*, 51 Miss., 795; *Per-
kins et al.* v. *Swank et al.*, 43 Miss., 349; *Bell* v. *Flaherty*,
45 Miss., 694.

"It has been accepted as the settled law in this state, since
the case of *Dixon* v. *Lacoste*, 1 Smed. & M., 70, that the oc-
cupancy and open possession of land under an unregistered
deed of conveyance, or bond for title or other contract of sale,
imparts notice to creditors and subsequent purchasers, and gives
them the same protection as though these written memorials of
title had been recorded." *Taylor* v. *Lowenstein*, 50 Miss.,
278.

We are cited to *Hiller* v. *Jones*, 66 Miss., 636, but that case
holds that possession of land under an unrecorded deed was the
equivalent of registration of the deed, while the possession

lasted under it; but that where the record shows a perfect chain of title the purchaser need not look to a former occupancy of the land under a deed of which such party had no notice. In this case the contention is that Stovall occupied the land all the time from his purchase up to the bringing of this suit. Wherefore, by the rule above laid down, Stovall's possession was equivalent to registration of the deed all the time.

W. W. Payne became convinced that he was mistaken about Stovall's admissions making him a tenant, and that the testimony of the witness (Phillips) to whom the old negro gave up the cotton as the agent of Payne, but never turned it over so that the question could be tried, failed to make him a tenant. When the ignorant man invoked the protection of the court, represented by able attorneys, he acknowledged his mistake and dismissed his suit and gave a quitclaim deed abandoning all claim to the land.

The complainant below exhibited his bill, and presented his title to the court, by which action he challenged consideration of and objections to it, and invoked the power of the court to approve and confirm and quiet his title on its own merits, and to cancel and remove as clouds conflicting titles. It is manifest from a careful scrutiny of this whole case, that it is without equity on the part of complainant, and this court is, therefore, compelled to reverse the judgment of the court below.

*The final decree of the court below is vacated and set aside, and the cause remanded.*