EASTMAN GARDINER ET AL. *v.* AZENA CREEL HINTON.

1. TENANTS IN COMMON. *Conveyance. Code* 1892, § 2734. *Adverse possession. Statute of limitations.*

Where one tenant in common of land conveyed the whole estate in fee, and the grantee entered, and he and his successors in title held exclusive possession, claiming thereunder the entire estate for more than ten years, such entry, possession, and claim will bar any suit for the recovery of the land by any of the original co-tenants, not under disability, under Code 1892, § 2734, providing that ten years' actual adverse possession by any person claiming to be the owner for that time of any lands uninterruptedly continued, in whatever way such occupation may have been commenced, shall vest title in such person.

2. SAME. *Record of deed.*

The fact that the original deed from the tenant in common was not placed on record until long after it was executed, and that suit was instituted by his co-tenants to recover the land within ten years after the date of its filing, was immaterial.

3. SAME. *Notice.*

Where the vendee of a tenant in common set up a claim in his own right to the whole tract of land, and held possession open and continuously for more than the statutory period, his possession was adverse, without actual notice to the other tenants in common, such vendee being under no relation to them which

imposed on him the obligation of giving notice, either actually or constructively, as a condition precedent to the assertion of a hostile claim.

FROM the chancery court of Jones county.

HON. JAMES L. McCASKILL, Chancellor.

Mrs. Hinton, the appellee, formerly a Miss Creel, was the complainant in the court below; Eastman Gardiner and others, the appellants, were defendants there. From a decree in complainant's favor the defendant appealed to the supreme court.

Appellee, Mrs. Hinton, filled her bill praying for the sale of the lands described therein for partition, alleging that she was the owner of an undivided one-third interest in the lands and that she was a co-tenant with the defendants. Defendants answered the bill, denying all the material allegations thereof, and claimed title to the land by adverse possession for more than ten years, by virtue of successive conveyances from one Isaiah Creel. The evidence showed that certain lands, including the lands in controversy, were partitioned in 1884 under a decree of the chancery court of Jones county, and the lands here in controversy were allotted to appellee and her two brothers, Isaiah and Nathaniel Creel. This land was described as "Lot 3 in S. W. ¼ N. W. ¼, sec. 5, township 8, range 11, west," and was allotted to appellee and her two brothers as tenants in common. On February 13, 1885, Isaiah Creel made a deed to John Creel of the entire lot 3. This deed was not filed for record until June 26, 1895. John Creel afterwards executed a deed to the entire lot to the Kamper-Lewin Manufacturing Company, who sold it to John Kamper, who executed a bond for title to Eastman Gardiner and others, appellants, in 1891, and on April 17, 1895, he executed a warranty deed to them of the entire lot 3. Appellee, Mrs. Hinton, testified that she lived in Perry county, Miss., and had lived there for nineteen years; that she is the daughter and heir of Allen Creel, who was a son and heir of Reuben Creel, who (Reuben) died, she supposed, about fifty years ago, but that she never heard of his death

until November, 1901; that she had never sold, nor authorized any one to sell, her interest in the estate; and that neither of the defendants ever notified her that they were claiming her interest in the property. Defendants introduced evidence showing the usual acts of ownership and possession of the different vendees from Isaiah Creel to defendants.

*Shannon & Street, Stone Deavours, Olin C. Hunt,* and *Mayes & Longstreet,* for appellants.

This case should be reversed on the merits and decree rendered here for the defendants, because the proof in the court below showed that the appellants had, if no other title, yet a perfect one by operation of the ten years' statute of limitations.

The uncontradicted proof shows that Isaiah Creel, in the year 1885, being a few months after the partition proceedings, executed a deed to the lands in controversy in severalty to one John Creel, who was a stranger. There is no evidence in the record that in the execution of such deed Isaiah Creel intended to assign to John Creel his undivided one-third interest based on such partition. That is a pure assumption.

It appears that John Creel did not put his deed on record until about ten years afterwards. But it also appears by undisputed evidence that he conveyed the premises in controversy, again in severalty, to the Kamper-Lewin Manufacturing Company in 1891. This deed was an absolute deed, and was not a mere quitclaim.

It also appears by undisputed evidence that for twelve or more years prior to the beginning of this suit, the premises had been taken possession of by the grantees of Isaiah Creel under the deed of 1885; that they had held the same continuously; that they received all the rents and profits; that they paid all the taxes; and that extensive, permanent, and expensive improvements had been erected upon the same by the parties so holding; and that in none of all these dealings had the com-

plainant any part or recognition, nor during all this time had she asserted any title.

Her seclusion in the wilds of Perry county is no answer to these facts, nor is her ignorance of the death of her grandfather. The operation of the statute of limitations depends upon the open, notorious, and adverse possession taken by the party claiming title, and does not depend upon the habits of life and the voluntary ignorance of the party ousted of her property rights.

Now grant that, as held in *Kenoye* v. *Brown,* 82 Miss., 607, a deed to the whole by one tenant in common cannot of its own operation impair the right of the other tenants. This is all that is held in *Kenoye* v. *Brown* along this line. In that case the question of the effect of the statute of limitations was not involved or considered. In connection with that question the existence of such a deed is a circumstance to be considered.

Grant, also, that, as decided in *Bentley* v. *Callaghan,* 79 Miss., 302, the possession of one tenant in common does not become adversary to the others without notice that his claim is antagonistic; that there must be shown such an intent on his part as to oust them as would justify them in bringing ejectment against him.

Still it remained true, and on this principle we rely, that the possession may be adverse as a matter of fact (and it is a matter of fact, not one of law), and the notice to the tenant in common, who is out of possession, is in fact given, and the statute of limitations begins to run, whenever any action is taken by the tenant in possession which in fact evidences an intention to assert adverse and hostile claims.

The legal principle has been recognized in this state. *Hignite* v. *Hignite,* 65 Miss., 447; *Day* v. *Davis,* 64 Miss., 253; *Alsobrook* v. *Eggleston,* 69 Miss., 833, 838.

There is plenty of authority for the foregoing propositions. We quote from Cyc. Law, vol. 1, pp. 1073–1077:

"(II.) *Necessity of Expulsion by Force.*—To constitute a

disseizin of a co-tenant it is not necessary that there should be an actual expulsion by manual force.

"(IV.) *Necessity of Knowledge or Notice.*—In order to constitute a disseizin of a co-tenant the fact of adverse holding must be brought home to him either by information to that effect, given by the tenant in common asserting the adverse right, or there must be outward acts of exclusive ownership of such a nature as to give notice to the co-tenant that an adverse possession and disseizin are not intended to be asserted. Actual verbal or written notice is not, however, necessary; adverse possession may be inferred from outward acts, open and notorious claim of ownership, and exercise of exclusive right. It has also been held that it is not absolutely essential that the co-owner should have actual knowledge; a tenant in common will be deemed to have notice of the adverse holding by his co-tenant where the hostile character of the possession is so open and manifest that a man of reasonable diligence would discover it.

"(D) *Specific Act Amounting to Adverse Possession.*—(1) *In general.* Sole and exclusive possession by one tenant in common for a great number of years, and reception of rents and profits without any accounting to or recognition of right of the co-tenants, and without any claim made by them, will, if unexplained or controlled by any evidence showing the reason for the neglect or omission of the co-tenants to assert their rights, furnish evidence which will authorize a finding of ouster and adverse possession.

"(E) *In connection with Denial of Co-tenant's Title.*— While an ouster or disseizin by a tenant in common is not presumed from the mere fact of sole possession, such possession of one co-tenant who claims the whole and denies the title of his co-tenant constitutes an ouster. But if a tenant in common denies the several title of a co-tenant, yet lets him into possession, it is not an ouster.

"(C) *In Connection with Assertion of Exclusive Title.*—So

reception of rents and profits by one tenant in common, openly asserting sole title in himself and denying title of any other person, is an ouster of the co-tenants and is adverse.

"(VI.) *Assertion of Title and Agreement to Sell the Whole.* —An assertion of an exclusive title to the whole of the land by a joint owner and a contracting to sell the whole are evidence of an adverse possession and such an ouster as to enable the cotenant to maintain ejectment."

*Hardy & Arnold, Brame & Brame,* and *J. P. Thornton,* for appellee.

The uncontradicted testimony on both sides shows that the land in controversy belonged to Reuben Creel, and both sides claim under and through this source. The complainant, without objection, introduced the partition decree and decree confirming report of commissioners made in 1884, wherein the land in controversy was set apart to Isaiah Creel, Nathaniel Creel, and complainant, Azena Creel—grandchildren of Reuben Creel—as tenants in common.

Even in ejectment where the defendant does not deraign title and offers none in evidence, but relies upon compelling the plaintiff to prove title, the plaintiff may introduce evidence to show that the defendant claims for the common source. On this point, see *Doe* v. *Pritchard,* 11 Smed & M., 327; *Wolfe* v. *Dowell,* 13 Smed. & M., 103; *Wightman* v. *Reynolds,* 24 Miss., 679; *Smith* v. *Otley,* 26 Miss., 291; *Griffin* v. *Sheffield,* 38 Miss., 359; *Gordon* v. *Sizer,* 39 Miss., 805; *Morgan* v. *Hazlehurst Lodge,* 53 Miss., 665; *Miller* v. *Ingram,* 56 Miss., 510; *McReady* v. *Lansdale,* 58 Miss., 877.

The land in controversy was owned by three tenants in common—Isaiah, Nathaniel, and Azena Creel. They occupied a relation of trust to each other, and the possession of one was necessarily the possession of all. There could be no divestiture of the title of Azena by limitation, except upon proof of such adverse holding by the other tenants in common or those claim-

ing under them as would amount to an ouster. It is not sufficient to show merely that the parties who claim under and through the deed from Isaiah Creel had possession of the land and that they claimed it, but two distinct propositions must be shown: (1) That they were actually in possession, claiming the whole of the land; (2) that they were claiming the entire interest adversely to the tenant in common, Azena Creel.

In order to affect the rights of Azena by the lapse of time, it was necessary for the defendants to show that she had notice of the adverse claim to the entire interest. This notice, of course, could be constructive or actual; inasmuch as the deed from Isaiah Creel to John Creel, under which the defendants claim, was not recorded for ten years after its execution, there was no constructive notice to complainant of the title relied upon under said deed—that is to say, she did not have any constructive notice of this deed until within less than ten years before suit begun. Nor did she have actual notice of the defendants' claim.

The owner of land cannot be divested of his title by lapse of time unless it is shown that the case falls within the statute of limitations. This is fundamental. The universal construction of the statute of limitations in England, originally known as Lord Tinterdon's Act, and the universal construction of the statutes in this country, has been that they only include the cases falling strictly within their terms. The defense of the statute of limitations, by which it is attempted to divest the title of the true owner, is an affirmative one, and the burden of proof is upon him who asserts it to show that the case falls within the statute, and all the facts necessary to constitute a full defense must be shown. This is elementary.

When we come to adverse possession as against a tenant in common, very rigid rules apply. These rules have been applied in the most technical way to protect the interest and title of a co-tenant by the decisions of this court.

In the case of *Hignite* v. *Hignite,* 65 Miss., 447, there was

a very technical application of the rule for which we contend. It was there held that the possession of the common property by one tenant in common inures to the benefit of all, notwithstanding such tenant may claim adversely under a fee simple conveyance of the common property from an outside party, if the other tenants in common have no notice of such deed or claim thereunder.

It is not pretended here that complainant had any notice, either actual or constructive, of the deed from the tenant in common, Isaiah Creel, purporting to convey the whole interest in the property.

A like technical application of the rule was made for the protection of a co-tenant in the case of *Alsobrook* v. *Eggleston,* 69 Miss., 833, and in *Bentley* v. *Callaghan,* 79 Miss., 302. In the two cases just cited, especially the last, the possession had been held a great number of years, although the report of the case does not give the dates.

Argued orally by *Edward Mayes,* for appellants, and by *J. M. Arnold,* for appellee.

TRULY, J., delivered the opinion of the court.

The question presented by this record is whether appellant can successfully interpose the plea of adverse possession. Code 1892, § 2734, provides, "Ten years' actual adverse possession by any person claiming to be the owner for that time, of any land, uninterruptedly continued for ten years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have been commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title," with certain exceptions saving the rights of minors and those suffering from unsound minds. The record proves in the instant case, beyond peradventure, the actual, open, and notorious possession by the appellants or their vendors for more than the statutory period before the institution of this suit,

on the 20th of February, 1903. That John Creel entered into possession in 1885 under an unrecorded warranty deed conveying the entire tract in fee simple is not denied. That his vendee, the Kamper-Lewin Manufacturing Company, and its vendee, John Kamper, and his vendees, Eastman Gardiner and others, appellants, entered into possession and actual occupancy in 1891, is not denied. Since that date the proof establishes that the occupancy and possession of the property in controversy by the appellants has been open and notorious, marked by every possible assertion of sole and absolute title—the construction of valuable improvements, the regular payment of all taxes, the selling of lots located on the lands, and an absolute control and supervision, exercised in the same manner and to the same extent of an owner holding by an indefeasible title. That appellants or their immediate vendors recognized, or, in fact, knew or had any grounds to suspect, that any one other than themselves claimed any interest in or title to the lands at the date of their purchase and entry, is neither contended by counsel nor suggested by the record. This is a full compliance with all statutory requirements as to the nature, extent, and duration of the occupancy and possession necessary to vest by adverse possession full and complete ownership. Unless, therefore, appellee can show that her case falls within some recognized legal exception which prevents the application of the statute, her claim must fail. The soundness of the general proposition that adverse possession, as defined by the statute, if uninterruptedly continued for the statutory period, vests full and complete title, is not questioned. But it is urged that the general rule has no application to the instant case, because it is said the possession of appellant was not adverse to appellee until the deed from Isaiah Creel to John Creel, conveying the estate in severalty, was placed of record; that appellee, having no actual notice of any adverse claim by appellants or their vendors, only received constructive notice by and from the date of the filing of the deed for record, and, as this only occurred

in 1895, less than ten years before the institution of the suit, the bar of the statute was not complete. This argument is founded upon the well-defined and firmly established principle that the possession of one co-tenant inures to the benefit of all. Nowhere, perhaps, is the rule expressed with more lucidity and legal precision than in *Hignite* v. *Hignite,* 65 Miss., 449 (4 South. Rep., 345; 7 Am. St. Rep., 673), where this court, through Cooper, C. J., says: "A tenant in common out of possession has a right to rely upon the possession of his co-tenant as one held according to the title, and for the benefit of all interested, until some action is taken by the other evidencing an intention to assert adverse and hostile claims. If one enters upon the land of a sole owner, and without his consent, he must know that such possession exists, and, within the time permitted by law, take steps to vindicate his right. But the possession of a co-tenant is a lawful possession, and of and by itself is not evidence of an ouster." The appellee contends that the legal principle just quoted is applicable to, and should control the determination of, this case; that appellee, in default of actual and constructive notice of an assertion of hostile claim of exclusive ownership, had a perfect right to rely upon the possession of those holding under her co-tenant as being subordinate to, and for the benefit of, the joint title; and that, without such notice and in the absence of actual ouster, no character or duration of use and occupancy would ever ripen into a title adverse to her claim as co-tenant. The cases of *Hignite* v. *Hignite, supra; Alsobrook* v. *Eggleston,* 69 Miss., 836 (13 South. Rep., 850); and *Bentley* v. *Callaghan's Executor,* 79 Miss., 304 (30 South. Rep., 709), are cited and relied on as supporting the doctrine and showing its applicability to the instant case. To this argument it is replied by appellants: Conceding the accuracy of the general proposition that one cotenant can never, unless in an exceptional case of actual ouster, acquire title to the joint property by adverse possession, that rule has no application to the instant case, for two reasons:

First—That appellants rely upon adverse possession—a possession adverse from its inception, an occupancy hostile from the moment of its commencement; that neither these appellants nor any of their vendors ever recognized any claim of appellee as co-tenant; that none of them ever occupied the relation of cotenant toward appellee; and that the original entry into possession was not in subordination to the claim of appellee. Second—That the deed executed by Isaiah Creel, the tenant in common, to John Creel, of the estate in severalty, was in itself the assertion of an adverse title, and that this deed, even though unrecorded, when coupled with the actual occupancy of the lands, was a sufficient predicate on which to base the claim of adverse possession; and, the occupancy having continued for the statutory period, the title vested by operation of law, without regard to the "way such occupancy may have been commenced or continued."

We find ourselves unable to agree with the argument presented on behalf of appellee. The facts of this case do not bring it within the scope of the rule which prevents one cotenant from acquiring a title in himself to the common estate without either an actual ouster or actual or constructive notice of the assertion of the hostile claim. We maintain that doctrine in its fullest extent, and with unimpaired force, in cases when properly applicable. But in the instant case there is no effort on the part of any co-tenant, or any one who ever occupied that position toward appellee, to acquire a paramount title to the common estate. Here from the moment of the entry the possession was antagonistic to the claim of appellee or any third person. The occupancy of John Creel in 1885 was founded on an instrument which, by its very terms, constituted such an act of ouster as would have justified appellee in bringing ejectment for the property. And since that time every moment of occupancy has been a reiteration of this assertion of hostile claim of exclusive ownership. No case can be found in our reports advancing a contrary view. The cases cited by

appellee are easily and clearly distinguishable. The Hignite case is one where a co-tenant in possession sought to acquire a hostile title to the whole interest in the land, and, without giving notice of his intention, assert the same against his co-tenant. The Alsobrook case is one where one in possession in recognition of the rights of his co-tenants, holding under a deed conveying only a half interest in the land, endeavored to set up this character of occupancy as an assertion of an adverse holding against his co-tenants. The Bentley case also presented the instance of one co-tenant seeking to found claim of title to the whole interest in the land upon an occupancy which was "by law presumed to be permissive of his co-tenants." An analysis of those cases shows that in each instance it was an effort on the part of one co-tenant to acquire for himself an absolute title to the common estate. This, under universally recognized principles, he was not permitted to do, and we have no purpose to vary or modify the views announced in any one of those opinions.

The case at bar presents no question of an attempt on the part of any co-tenant, or any person who ever occupied the relation of co-tenant, to assert any paramount title in himself. Had John Creel entered into actual occupancy of the land in 1885 without any deed, and remained in open, exclusive, notorious possession, claiming adversely as owner, at the end of ten years such possession would have vested in him full and complete title at least to the land actually occupied. *Welborn* v. *Anderson,* 37 Miss., 155. . Had the deed from Isaiah to John Creel never been executed and the deed from John Creel to the Kamper-Lewin Manufacturing Company passed no legal title, still it would have constituted color of title; and as Kamper and these appellants entered into possession in 1891 under such color of title, and remained in the actual adverse possession, under the circumstances set forth in this record, their title would have been fully vested by operation of law before the institution of this suit. *Nash* v. *Fletcher*, 44 Miss., 609; *Hanna* v.

*Renfro,* 32 Miss., 125. This being true, we are unable to see how the fact that the deed from Isaiah to John was not placed of record until 1895, and that suit was instituted within ten years after the date of the filing thereof, can possibly avail the appellee. That deed contained no recognition of appellee's title, was in subordination of no assertion of interest by appellee, contained no provision which would put appellants on notice that it was a deed of one co-tenant conveying the entire estate in fee. It was itself the assertion of a hostile title, an act of disseizin, and a constructive ouster of the other co-tenant. And in this connection it is worthy of note that in the Alsobrook case, in deciding that the co-tenants out of possession were entitled to recover that portion of the land held by Wade under a deed in severalty from the other co-tenant, it is expressly stated that such sale was "less than ten years before this suit was commenced," thus impliedly, at least, committing the court to the generally accepted doctrine that a holding of possession for the statutory period under a deed in severalty from one co-tenant to a stranger to the title vests a full and complete title. Sedg. & Wait., Trial of Title to Land, sec. 287; Freeman, Co-tenancy & Partition, sec. 224; Tyler, Ejectment & Adverse Enjoyment, p. 882; *Larman* v. *Huey's Heirs,* 13 B. Mon., 436; *Roberts, Adm'r,* v. *Morgan,* 30 Vt., 319. Had the deed from Isaiah to John Creel never been placed of record, appellant's open, exclusive, and continuous occupation of the land as owner would at the end of ten years have ripened into a valid title. *Stovall* v. *Judah,* 74 Miss., 756 (21 South. Rep., 614).

It should be observed that more than ten years elapsed between the execution of the deed to John Creel, 13th of February, 1885, and its filing for record, 22d of June, 1895. But, aside from this, it was from the date of its record simply an additional evidence of the hostile title asserted by appellant. It was no inferential recognition, as in the Alsobrook case, of the title of any co-tenant. On the contrary, its terms expressly negative the idea that any right or interest is outstanding in

any third person. "When one tenant in common of land conveys the whole estate in fee, with covenants of seizin and warranty, and the grantee enters and holds exclusive possession thereof, such entry and possession are a disseizin of the cotenant." 45 Cent. Dig., "Tenancy in Common," sec. 39; Washburne on Real Property, sec. 883.

The entry by John Creel under a claim of title to the entire tract started the running of the statute of limitations. The operation of the statute was not interfered with by the placing of the deed of record. The bar of the statute was complete when ten years' continuous, exclusive, adverse possession had expired, without regard to the "way such occupancy may have been commenced or continued."

It is urged by appellee that the fact that the deed from her co-tenant conveying the entire estate was not placed of record until within less than ten years of the institution of the suit becomes material, because until that time there was no ouster and no constructive notice to appellee of adverse claim. Adverse possession in this class of cases does not depend upon actual notice. The principle which requires actual notice, or acts of repudiation equivalent thereto, applies only to cases where there is some relation between the occupant and the holder of the legal title, which imposes upon the occupant the obligation of giving notice, either actually or "shown by such acts of repudiation of their claim as are equivalent to actual notice," as a condition precedent to the assertion of any hostile claim by him. This distinction is plainly foreshadowed in the Bentley case, *supra*. Such familiar cases as landlord and tenant, trustee and beneficiary, tenants in common, and the like, are examples in which the rule applies. But that principle does not control in a case where the occupancy is from its inception the assertion of a hostile title, and there is no fiduciary relationship between the parties. Such, in our judgment, is the instant case. "When the vendee of one tenant in common sets up claim in his own right to the whole tract of land, and enters

and holds possession open and continuously for more than the statutory period, his possession is adverse, and a recovery by the other tenants in common is barred, although they had no actual notice of the adverse character of the possession." *Greenhill* v. *Biggs* (Ky.), 2 S. W., 774 (7 Am. St. Rep., 579); *Rutter* v. *Small,* 68 Md., 133 (11 Atl., 698; 6 Am. St. Rep., 434).

From the entry by John Creel, in 1885, down to the institution of this suit, in 1903, the continuous occupancy of this land has been actual, open, notorious, and adverse, uninterrupted by any assertion of claim by others, and exclusive and undisturbed. It is true that appellee contends that, having notice that the lands had been partitioned and a certain allotment made to her and her brothers as co-tenants, she was ignorant of her rights, and hence had no opportunity of asserting her own or contesting appellants' claim. Assuming this to be true, and waiving all consideration of the legal presumption that, being a party to the partition proceedings, she was advised thereof, it cannot avail for her benefit. It is the policy of our law, devised to render secure the title to land, that in cases like this "actual adverse possession" is presumptive notice to all parties in interest of the claim of the occupant. *Wilson* v. *Williams' Heirs,* 52 Miss., 492. In this case the nature of the occupancy, the extent of the possession, the character of the control, the rights of ownership exercised over the land, in the eyes of the law, constitute notice to the world; and, having been uninterruptedly continued for the statutory period, appellants' title was at the institution of the suit "full and complete."

*Wherefore it follows that the decree must be reversed, and the cause remanded.*