359 So.2d 758 (1978)
Wilmer BOWEN et ux.
v.
John H. BIANCHI et al.
No. 50291.
Supreme Court of Mississippi.
May 31, 1978.
Dale, Hathorn & Clark, Joseph Dale, Prentiss, for appellants.
Patterson, Harper, Mallette & Bellan, C.E. Harper, Jackson, Donald G. Kruger, Prentiss, Allen & Allen, Robert O. Allen, Donald B. Patterson, Brookhaven, for appellees.
Before ROBERTSON, LEE and BOWLING, JJ.
BOWLING, Justice, for the Court.
Wilmer Bowen and wife were complainants under a bill of complaint filed against John H. Bianchi and others in the Chancery Court of Jefferson Davis County. Each defendant filed a special demurrer to the bill of complaint. All demurrers were sustained by the lower court and an appeal was granted.
Under the allegations of the bill of complaint, all of which we assume are true in considering the cause, complainants sought to cancel certain mineral interest conveyances held by the defendants involving forty acres of land in Jefferson Davis County. It was alleged that these instruments all constituted clouds on complainants' title and should be cancelled and set aside.
The bill of complaint alleged that on November 17, 1942, G.C. Sims, then owner of the property, entered into a contract with complainant Wilmer Bowen, under the terms of which Sims agreed to sell and Bowen agreed to purchase the property in question. Under the terms of the contract, a copy of which was attached to the bill of complaint, the total consideration for the sale and purchase was $500, to be paid over a period from the date of the contract to May 15, 1946, with payments of $100 each, the first to be made at the time of executing the deed, and succeeding payments due annually on May 15, 1943, 1944, 1945 and 1946, with all payments to bear interest at the rate of eight percent per annum. The contract then provided that upon receiving the May 15, 1946, payment, G.C. Sims would execute and deliver to Bowen a warranty deed to the property. In the event of default in the payments, those already paid would be considered as earnest money and rent.
It was alleged that under and by virtue of the contract, G.C. Sims gave up all possession of the land and then complainants immediately entered into possession *759 and began construction of a residence thereon; that complainants have continued in uninterrupted possession and use of all the land from the date of the contract until the present time; that G.C. Sims never was in possession of said land or any part thereof after November 17, 1942.
It was alleged that on February 22, 1945, a purported mineral right and royalty transfer instrument was executed by G.C. Sims and wife to C. Fred Morgan, and at that time complainants were in full possession of all the land and had constructed and were using the residential building as their home, together with other buildings on the said land; they had fenced the land and were farming a portion thereof. It was alleged that all this possession was sufficient notice to put the said C. Fred Morgan on inquiry which would have revealed the existence of the land purchase contract and the interests of the complainants.
It was alleged that all payments were made under the contract and on August 20, 1946, G.C. Sims and wife, P.L. Sims, carried out the obligation of the contract by executing to the Bowens a warranty deed to the subject property. Allegations were made that the defendants in the suit were bound by the terms of the land purchase contract and, therefore, "took nothing" by virtue of their instruments.
It was alleged that the complainants did not have knowledge of the execution, recordation, or existence of any of the purported mineral right and royalty transfer instruments received and held by the defendants derivatively from the instrument executed by Sims and wife to C. Fred Morgan; that at no time during the period set out in the bill of complaint had the complainants been disturbed in their possession of the property and had no reason to believe that they did not own the mineral interests.
The special demurrers filed by the defendants raised the issue that the cause of action set out in the bill of complaint was barred by the statute of limitation as set out in Mississippi Code Annotated sections 15-1-7 and 15-1-9 (1972). The lower court agreed with these contentions and entered its decree sustaining all demurrers as being barred by the above set out statutes of limitation.
Appellees (defendants below) contend that the instrument executed in favor of C. Fred Morgan on February 22, 1945, was at most a voidable instrument and as it was immediately recorded in the office of the chancery clerk, appellants had constructive notice of the instrument and the ten-year statutes of limitation began to run on the date of recordation.
Appellants contend that by taking complete possession of the property pursuant to the contract of November 17, 1942, and the manner of possession which was clearly evident on February 22, 1945, the date of the mineral instrument to Morgan, put Morgan on notice of appellant's claim to the property, including the minerals, under the terms of the contract and that any inquiry would have revealed appellants' right to the surface and minerals under the contract. They contend that the mineral instrument to Morgan was void as Sims had conveyed the surface and the minerals to appellants upon the execution of the contract; that because of the void instrument and the open, full and complete possession of the property, the statutes of limitation set out in the demurrers are not applicable. We agree with these contentions of appellants.
Appellees rely primarily on the following cases: Aultman v. Kelly, 236 Miss. 1, 109 So.2d 344 (1959); Neal v. Teat, 240 Miss. 35, 126 So.2d 124 (1961); Dent v. Calhoun, 326 So.2d 320 (Miss. 1976); Cooley v. Cooley, 328 So.2d 57 (Miss. 1976); and Robinson v. Rhodes, 236 So.2d 746 (Miss. 1970).
Appellants correctly contend that the facts and opinions in these cases differ from the case at bar. We need to analyze those cases. In Aultman, supra, the heirs of one Raphael C. Cuevas, deceased, sought to cancel a mineral deed executed by Cuevas on April 30, 1945, to Ferris E. Tate. The suit charged that Cuevas was mentally and physically unable to execute the instrument and that he thought he was signing a lease rather than a mineral deed. It was alleged that Tate secured the deed from Cuevas by *760 fraud and, therefore, the deed was voidable. The distinction between Aultman and the present case is that the alleged fraudulent mineral deed was secured from the owner of the property at a time when he was in actual possession thereof.
In Neal v. Teat, supra, the same ownership and possession situation existed as in Aultman. The bill in chancery was filed by Oscar Neal and wife, Hattie Neal, alleging that the agents of the defendant Teat fraudulently obtained from them a deed to an undivided one-half interest in and to the oil, gas and other minerals under the property in question. Again, as in Aultman, the alleged fraudulent and voidable instrument was secured from the owners in possession. The Court in holding that the two statutes of limitation in question barred the suit, made several observations:
The application of Code Sections 709 and 710 [now Sections 15-1-7 and 15-1-9, Code of 1972] to cases involving suits for the cancellation of instruments creating the peculiar estate that the owner of a severed mineral interest holds presents some difficulties. The question now before the Court was first presented in Hunt v. Davis, 208 Miss. 710, 45 So.2d 350, but the Court found other grounds for the disposition of that case and pretermitted consideration of the application of Code section 710 with the observation that the question was interesting but perplexing.
Other interesting observations made by the Court in Neal were:
... A person who owns property, and who is in possession of it, has more than a right of action. He has everything the law can give him, and it is unnecessary that he resort to a suit to gain back that which he has never lost. Neither of the statutes of limitations referred to may be invoked in a suit where (1) the complainant holds title, (2) has the actual or constructive possession of the property, and (3) the defendant, whose claimed adverse interest is sought to be cancelled, is not in possession. In short, statutes of limitations do not begin to run against a person who has (1) a good title, and (2) actual or constructive possession of lands, until an adverse entry has been made.
.....
... One of the areas in which the advent of the severed mineral estate creates new problems in applying established rules of law is that of possession  the dominant factor in the results reached in each of that line of cases beginning with Dingey v. Paxton, supra [60 Miss. 1038 (1883)].
It is obvious in Neal that the paramount consideration by the Court was that the persons allegedly defrauded and who brought the suit not only owned but were in full possession of the entire property at the time they executed the alleged voidable instrument.
In Dent v. Calhoun, supra, Estella Zinnerman, on May 26, 1955, conveyed the entire mineral interest in the land in question to Windham and Calhoun. This instrument was filed for record on May 27, 1955. Zinnerman did not get title to the property until a forfeited tax land patent was conveyed by the State on June 9, 1955. On June 11, 1955, Zinnerman conveyed the land to appellant Dent. The suit was filed by Dent against Windham and Calhoun to cancel their mineral instrument as a cloud. The chancellor found that as a fact Dent learned of the mineral deed within a few days after its execution but waited until more than ten years elapsed before filing suit. It was clear that this voidable deed with the knowledge of its execution by Dent set in motion the statutes of limitation.
In Cooley v. Cooley, supra, the facts presented to the lower court were not set out. However, the Court held that the statutes of limitation as applied in Neal and Dent were applicable. It is significant that the opinion stated:
The issue before the Court is whether a landowner's suit to cancel mineral deeds on the ground of fraud is barred by limitations after notice of constructive possession is proclaimed by filing the mineral *761 deeds for record upon the land rolls of the county. (Emphasis supplied).
This indicates that the suit also involved a claim by an owner in possession who executed an alleged voidable instrument while in that status.
In Robinson v. Rhodes, supra, the question now before the Court was not reached, and the case obviously does not apply here.
Now let us look at the authorities applicable to the contentions of appellants; that is, that the statutes of limitation in question do not apply here because (1) the mineral instrument in question was void and not voidable; (2) it was secured by fraud from appellants, but if any fraud, it was by Sims, the original owner and/or Morgan, and (3) after November 17, 1942, the date of the contract, appellants were in full, sole and complete possession of the relatively small tract of land, had built their residence thereon, and were living on the land and working it that the time the mineral instrument was executed and delivered from Sims to Morgan; and (4) any reasonable inquiry would have caused anyone to ascertain the true facts of possession and their claim to the property and minerals under the contract.
At the outset, it might be argued that the "contract" did not operate as a conveyance to appellants of all surface and mineral rights as in a deed. This principle was discussed and settled in the early case of Taylor v. Lowenstein, 50 Miss. 278 (1874), where the Court said:
It has been accepted as the settled law in this state, since the case of Dixon v. Lacoste, 1 S. & M. [70] 101, that the occupancy and open possession of land under an unregistered deed of conveyance or bond for title or other contract of sale, imparts notice to creditors and subsequent purchasers, and gives them the same protection as though these written memorials of title had been recorded. (Emphasis supplied).
The above principle was affirmed in Stevens v. Hill, 236 So.2d 430 (Miss. 1970); Gulf Refining Co. v. Travis, 201 Miss. 336, 29 So.2d 100 (1947); Russell v. Scarborough, 155 Miss. 508, 124 So. 648 (1929); and Stovall v. Judah, 74 Miss. 747, 21 So. 614 (1897).
The principal case on the issues before the Court appears to be Gulf Refining Co. v. Travis, supra. There, G.B. Travis conveyed the property in question to his daughter, Mrs. J.H. Hooks. She was a nonresident of the State of Mississippi but immediately placed a tenant on the property who established and retained possession while living on and working the land. After the conveyance to his daughter, G.B. Travis executed a mineral deed to another party. This deed was recorded but Mrs. Hooks did not record her deed of conveyance for approximately ten years. The Court, in holding that the statutes of limitation did not apply because of the possession of Mrs. Hooks through her tenant and subsequent grantee, made the following statements, to wit:
... Mrs. Hooks was in the actual occupancy of the land by her tenants when the mineral lease and the mineral deeds were made by Mr. Travis in 1937, and these tenants also knew that Mrs. Hooks and not Mr. Travis was the owner. An inquiry of the tenants in possession at the dates mentioned in this paragraph would have disclosed her ownership to any prospective purchaser.
But the persons or agents who procured the mineral deeds and leases aforementioned did not go to the land or upon it, nor did they send any person to do so. No information about it otherwise was obtained by them.
.....
The salient facts above stated are either undisputed or else are shown by evidence sufficient to support the finding upon the facts in favor of appellee by the chancellor. They present the first contention earnestly pressed by appellants, that it is immaterial whether Mrs. Hooks was in actual possession of the land by her tenants at the time appellants acquired their mineral leases and mineral deeds aforestated, because, as appellants contend, the registration statutes as amended by *762 Chap. 239, Laws 1924, Sections 2146, 2147, and 2148, Code 1930, same sections 867, 868, 869, Code 1942, give priority in title to the holder who first files his deed for record in the absence of actual notice to him.
For a century, beginning as far back as Dixon v. Doe, ex dem. Lacoste, 1 Smedes & M. 70, and through a uniform line of decisions on down to Beauchamp v. McLauchlin, 200 Miss. 83, 25 So.2d 771, decided in 1946, it has been consistently held that the registration statutes do not affect an owner in possession by himself or by his tenants, and that his actual possession is all the notice necessary to any prospective purchaser.
.....
If we were to sustain the contention now made by appellants on this point, we would open up one of the most profitable fields for legalized plunder that could well be imagined.
.....
Moreover, there have been a number of cases before this Court in the twenty-two years since the passage of Chapter 239, Laws 1924, wherein the stated rule as to the effect of actual possession has been continued to be maintained. One of these is Kalmia Realty & Ins. Co. v. Hardy, 164 Miss. 313, 145 So. 506, 507, wherein it was suggested that the rule previously maintained as to the effect of actual possession as notice should be modified, and the Court responded that "No hardship can result from refusing to modify the rule and continuing to hold persons who desire to purchase or obtain liens on property to the necessity of ascertaining whether or not it is in the possession of a person other than its owner; and, if so, what the title of the possessor is, and, if he claims under another, what the title of such other is."
It is conceded by the parties and is alleged in the bill of complaint that no actual possession of the minerals under the subject property was taken by the original grantee, or his subsequent grantees or assigns. In the case of Continental Oil Co. v. Walker, 238 Miss. 21, 117 So.2d 333 (1960), involving the setting aside of a forged mineral deed, this Court, in affirming the lower court's action is setting the deed aside, said:
In addition to contending that the proof is insufficient to establish the forgery, the appellant, Continental Oil Company, also contends that this action is barred by the statutes of limitation, Sections 709 and 710 of the Mississippi Code of 1942 [now sections 15-1-7 and 15-1-9, Code of 1972]. It is sufficient to say with respect to this contention that the statutes relied upon have been held by this Court not to apply except where the person invoking the same has been in adverse possession of the land against the true owner. Kennedy v. Sanders, 90 Miss. 524, 43 So. 913. Of course, it is undisputed in this record that the minerals herein involved have never been taken possession of by Continental Oil Company.
Therefore, we conclude that the learned chancellor erroneously applied Mississippi Code Annotated sections 15-1-7 and 15-1-9 (1972), to the admitted alleged facts of the bill of complaint. He should have overruled the demurrers and tried the issues under the bill of complaint and answers or other pleadings by the appellees. The cause is therefore reversed and remanded.
REVERSED AND REMANDED.
ROBERTSON and SMITH, P. JJ., and SUGG, WALKER, BROOM, LEE and COFER, JJ., concur.
PATTERSON, C.J., took no part.