ILLINOIS CENTRAL RAILROAD COMPANY *v.* WILEY J. SANDERS.

[46 South., 241.]

**1. LANDS.** *Contracts. Licenses. Railroads. Spur track.*

A written contract between a milling company and its assigns and a railroad company and its successors, reciting that the former desired to connect its mill with the latter's railroad by a spur track, binding the milling company to furnish designated ground properly graded and the cross-ties for its construction, and to maintain the same while in use under the contract and for one month after notice to the railroad company of a desire to terminate it, binding the railroad company to furnish the rails, switches, etc., and lay the track; and containing obligatory provisions for its operaton, is not a mere license, but a contract binding on a subsequent purchaser with notice, an assignee of the milling company's plant and of the land on which the spur track was laid.

**2. SAME.** *Possession. Vendor and vendee. Constructive notice. Inquiry.*

Although the contract mentioned above was not recorded in the record of deeds and a subsequent purchaser had no actual notice of it, the railroad company's occupation of the spur track and its habitually repeated movement of cars thereon put him upon inquiry and charged him with knowledge of the contract.

**3. SAME.** *Adverse possession. Code 1906, § 4987. Statutory penalty. Destroying fence.*

In a suit for damages and the stautory penalty for the destruction of a fence, under Code 1906, § 4987, providing a penalty for so doing, brought during the life of the contract (mentioned above) by an assignee of the milling company against the railroad company for backing cars against and thereby destroying a fence which plaintiff had constructed across the spur track, no question of adverse possession was presented.

FROM the circuit court of Attala county.

HON. J. T. DUNN, Judge.

Sanders, appellee, was plaintiff in the court below; the railroad company, appellant, was defendant there. From a judgment in plaintiff's favor the defendant appealed to the supreme court.

Sanders, appellee, sued the railroad company for damages claimed because the company had pushed its cars against and destroyed a fence which plaintiff had built, on what he claimed to be his land, across a spur track operated by the railroad company. Sanders claimed that the railroad company had no right to maintain the track against his will, and brought his action for actual damages and the penalty under Code 1906, § 4987, which is as follows:

"4987 (4422). If any person shall put down any fence or bars, or open any gate, not his own, and leave the same down or open, without the permission of the owner, or shall in any manner injure or deface any bridge, building, or other structure not his own, he shall pay to the owner twenty dollars for every such offense, and shall be liable for all damages that may have resulted from such act." Sanders traced his title through Jeffries & Co., with whom the railroad company had the contract set out in the opinion of the court, being a remote assignee under them, of the milling plant and the land on which the spur track was located.

*Mayes & Longstreet,* for appellant.

It will be seen from the contract that either party had a right to terminate the arrangement whereby the railroad spur was constructed on the lot by giving to the other thirty days' notice in writing. The court will note that the requirement of the contract is that such arrangement must be terminated by a written notice, not otherwise.

The whole of this case, therefore, is that this record wholly fails to show, and Sanders does not even claim, that any written notice has ever been given to the railroad company. Omitting to give the notice required by the contract, appellee simply put a fence across the spur track. The railroad conductors backed their cars against the fence and knocked it down, and that is all there is to the case. Plaintiff below could not recover, and his judgment should be reversed for the simple reason that he

did not stand by the contract, and had not given the written no·
tice which the contract requires.

He tries to get out of that by stating that he had no knowl-
edge of the contract, but the railroad company was in possession
under the contract, using the spur daily, and such possession is
the equivalent of recordation. It put him on notice.

And the railroad company, so being in possession, Sanders
does not even claim that he made inquiry of his vendor, or of
any one else, in fact, how it came about that the railroad com-
pany had its spur there.

Under these circumstances there should have been a judgment
for the defendant, the railroad company. Sanders, by giving
the written notice can terminate the railroad's right of posses-
sion, but he must give that notice; and he cannot terminate it
in any other way.

For the foregoing reasons the court will see, without going
into details, that all the instructions given for the plaintiff were
erroneous. They all proceed upon the idea that the railroad
company was on the lot in question only by a revocable license,
which could be revoked in any way; when the fact is that while
the right was revocable, it could be revoked in only one particu-
lar way.

For the same reason, the court below erred in modifying the
instructions which were given in behalf of the defendant, and
in refusing the peremptory instructions requested by the defen-
dant.

*S. L. Dodd,* for appellee.

The appellee testifies positively and he was uncontradicted
that he had no knowledge of the written agreement; that he
never heard of the railroad company claiming to exercise any
right as to the premises in suit until after suit was brought in
this case.

Besides this, a very material fact, the instrument was not re-
corded, and afforded the appellee no notice whatever of the
claim of the appellant.

The appellant nowhere in the record by any witness claims to have gone upon this land and premises involved in this suit, after it had been enclosed by the appellee, nor does it claim to have ever protested at the appellee inclosing his premises with the fence that was knocked down.

WHITFIELD, C. J., delivered the opinion of the court.

The stipulations in the contract made between the appellant and Jeffries & Co., in June, 1893, are decisive of this controversy. That contract is as follows:

"Made this first day of June A. D., 1893, between Jeffries and Company, of Attala county, Mississippi, party of the first part, and the Illinois Central Railroad Company, party of the second part. Whereas, party of the first part is engaged in business at Kosciusko in the state of Mississippi, and, in order to facilitate the carrying on of said business, is desirous of having a spur or side track constructed, connected with the railway of the party of the second part, and extended thence to the premises occupied by the party of the first part at Kosciusko, aforesaid, as shown upon the plat hereto annexed, it is now mutually agreed as follows:

"First. The party of the first part hereby agrees to furnish, free of cost to the party of the second part, the necessary ground for the construction, use and maintenance of the said spur, or side track, so far as the same shall extend beyond the right of way and ground of the party of the second part, and give the said party of the second part secure and exclusive possession thereof, and maintain the said party of the second part in such possession so long as this agreement shall continue in force.

"Second. The party of the first part further agrees, at their own cost and expense, to do all the grading and furnish all the crossties and switch ties needed for the construction of the said spur or side track, and to renew the same when required, and to keep and maintain the said track in good order and condition, after it shall have been laid, so long as the same shall be used

for the benefit or accomodation of the party of the first part, and for one month after written notice shall have been given by the party of the first part, to the party of the second part, of their desire to relinquish the use of said track. All work and materials done or furnished by the said party of the first part to· be subject to the approval of the party of the second part.

"Third. Upon the completion of the grading to the satisfaction of the party of the second part, and the delivery of the ties upon the ground, of such size, shape and kind as the party of the second part shall direct, the party of the second part agrees to lay the side track and furnish rails, switches, frogs, spikes, and joint fastenings needed for the same. Upon which line the first party shall ship one car per year for each lineal foot of track constructed, failing to do, the party of the first part shall pay six per cent. interest on the cost of the material furnished by said party of the second part. The party of the first part shall also keep lighted the switch light on said switch or switches. The party of the second part shall furnish the lamp, oil, wick, etc., necessary to do so.

"Fourth. The party of the first part hereby agree to pay for all damage, loss or injury whatsoever which shall be caused in whole or in part by the switch or switches to said· spur or side track being left open or not set securely to the main track and locked, or that may in whole or in part arise from or be chargeable to any want of care or negligence on the part of the party of the first part in keeping the said track in perfect condition, or which shall arise from allowing any car on the said spur or side track to stand too near to any other railway track of the said party of the second part, and in case of suit brought against the party of the second part to recover for any such damage, loss or injury, the said party of the first part, further agrees to pay all attorney's fees and costs that may be incurred in de-· fending such suit by the party of the second part, as well as all damages that may be recovered therein.

"Fifth. The party of the first part hereby agrees to protect

the said party of the second part and save it harmless from all liability for damage by fire, which, in the use of the said spur or side track or any operation of the railroad of the party of the second part, or from cars or engines lawfully on its track or tracks, may accidentally or negligently be communicated to any property or structure of the said party of the first part.

"Sixth. The party of the second part shall have the right at any time in its discretion to abandon the use of the said spur or side track, and to take up and remove the rails, switches, frogs, spikes, rail fastenings and other materials furnished by it from the premises occupied by said track, provided, however, that a written notice of its intention to remove the said track shall be given to the party of the first part thirty days before the removal of the same shall be commenced.

"Seventh. This contract shall be binding on the heirs, executors, administrators and assigns of the said party of the first part, and on the successors and assigns of the said party of the second part.   In witness whereof, the said parties have hereunto set their hands the day and year above written."

It will be seen from the mere reading of this contract that it provides for no mere license.   It is a contract made upon a valuable consideration binding the respective parties to the discharge of certain respective obligations.   One of the principle stipulations is that in case either party desire the discontinuance of the spur track he should give the other thirty days' written notice to that effect.   The last clause in the contract expressly recites that the contract shall be binding on the heirs, executors, administrators, and assigns of the party of the first part, and on the successors and assigns of the railroad company.   This contract was never recorded.   This property was sold by Jeffries & Co., and has passed through several mesne conveyances into the hands of the present appellee.   The evidence shows, overwhelmingly, that each of the successive assignees from Jeffries & Co. until the present appellee took possession, operated the mill—saw, grist, and planing mill—and that the railroad company, in

accordance with the terms of this contract, used the said spur track, through all these years and under all these successive vendees, precisely as it did when Jeffries & Co. owned the property. This is too clear for any disputation. The railroad company, acting under the terms of this written contract, has gone on through all these years from 1893 down to the time of the occurrence which gave rise to this suit, using the spur track in all respects precisely as it did when Jeffries & Co. owned the property.

There seems to have been a good deal of confusion in the conduct of this cause in the court below, and indeed, misconception as to the point on which the case should have turned. The learned court below, for example, charged the jury, in several instructions for the plaintiff, to the effect that "a mere license to use another's land may be revoked at any time by the licensor, and is revoked by a sale of the real property involved." This principle was repeated several times in the instructions given for the plaintiff. It must be too obvious for comment that this contract is not a "mere license." It is a contract bottomed on a valuable consideration, most carefully drawn, and conferring substantial rights and imposing definite obligations, which rights and which obligations have to be exercised and met according to the terms of the contract.

Then, again, it seems to have been thought in the court below that the case was to be fought out upon the theory of adverse possession for more than ten years of the property in controversy. This, of course, was a misconception. All that is involved in this case under this contract is the right of the railroad company to use this spur track, as stipulated in the contract, until such use shall be terminated by thirty days' written notice given by Jeffries & Co., or any of its assigns. Appellee here was bound by the stipulations of this contract. He is an assignee, a vendee, in the same chain of title, and bound by all the recitations in this contract.

The chief defenses, practically, are the mistaken one as to

the right of the railroad company. to the use of this spur being merely a license; second, that the appellee never had any notice actual or constructive, of this contract; and, third, that if the railroad company ever had the right to insist on the thirty days' written notice, it has waived it by its course of conduct in dealing with the spur track under the ownership of the successive vendees. The appellee, of course, had no constructive notice, since the contract was not recorded, but he knew the spur track was there—over the ground that he bought; he knew it was being constantly used by the railroad company; and he was, of course, put, by this actual knowledge of the possession of the spur track and the use of the spur track by the railroad company, on inquiry as to what the rights of the railroad company were, and that inquiry would speedily have put him in possession of the terms of this written contract. He was bound, under the circumstances, to have made this inquiry, and was chargeable with knowledge of the terms of the contract which that inquiry would have disclosed.

As to waiver, there is no evidence to support such a contention. On the contrary, the overwhelming weight of the evidence clearly shows, as stated in the outset of this opinion, that the use of this spur track by the railroad company has been continuous from 1893 until this occurrence, and that such use has been exactly the same in all respects as it was when Jeffries & Co. owned the property. Under these circumstances this suit cannot be maintained, for the reason that the appellee did not give the appellant the thirty days' written notice required by the contract.

The judgment is reversed, and the suit dismissed.

*Reversed.*