## FRYE *v.* ROSE ET AL.

[83 South. 179, In Banc. No. 20829.]

1. VENDOR AND PURCHASER. *Purchaser charged with notice of rights of tenant in possession.*

   The actual possession of land is notice to all the world of whatever rights the occupant really has in the premises and the vendor cannot convey to any other person without such person being affected with notice.

2. LANDLORD AND TENANT. *One who leases from the owner before sale is not a sublessee of such owner.*

   Where a tenant leases land from the owner for one year and before the expiration of the lease another party purchases the land and, after such purchase verbally leases the land for the succeeding year to such tenant and afterwards sells the land and enters into a lease himself with his vendees at an increased rental, in such case the original tenant is not a sublessee of his last landlord and is not liable for the increased rental contracted for by his last landlord.

APPEAL from the circuit court of Coahoma county.

HON. W. A. ALCORN, Judge.

Suit by Wilbur E. Rose and another against G. G. Frye. From a judgment for plaintiff, defendant appeals. The facts are fully stated in the opinion of the court.

*Maynard & FitzGerald,* for appellant.

The questions presented for the decision of the lower court are few in number and can be concisely stated as follows: First: could J. H. Herrin legally make a lease to the lands in controversy in September, 1916, to take effect in January, 1917 for the year 1917 without putting the same in writing?

This proposition is too plain for argument and is directly decided by the supreme court of Mississippi in

the following cases: *Gresham* v. *Lutrick*, 76 Miss. 444;
*McCroy* v. *Tony*, 66 Miss. 233.

Second:.Being in possession of the property under
an unexpired lease and also the owner of a lease to
commence at the expiration of the unexpired lease to
run for one year, did not the possession of the appellant
give the purchasers, W. E. Rose, and others who did not
purchase until December 14, 1916, notice of any equities
or rights claimed by the tenant who is the appellant
here?

This proposition was first passed on by the supreme
court of Mississippi in the case of *Dixon* v. *Lacosté*,
1. S. & M. 107, in which the court said: "Possession by
the vendee is evidence to creditors and purchasers of
the conveyance; or, at least, is so strongly circumstanced
that it is now uniformly regarded as such evidence of
notice."

Possession is a fact to put creditors and purchasers
on inquiry as to the nature and extent of the estate
of the vendee and has the effect of charging with
knowledge of his actual estate and title." *Bell* v.
*Flaherty*, 45 Miss. 694.

"The possession of a person occupying land is notice
of, and puts every other person dealing with reference
to such land on inquiry as to the extent of his claim."
*Bolton* v. *Roebuc*, 27 So. 630. "As K. was in possession
of the property under this contract, it is notice to the
world of his rights and equities, and interest of the
bank acquired in the land through Henderson is subordi-
nate to the interest which Kirby had in the same prop-
erty."

This is the law as declared by every decision rendered
by the court where the question was involved. *Taylor* v.
*Lowenstein*, 50 Miss. 278; *Strickland* v. *Kirk*, 51 Miss.
795; *I. C. R. R. Co.* v. *Sanders*, 93 Miss. 107; *Boldon*
v. *Roebuck*, 77 Miss. 710; *Allen, etc.* v. *Milstead*, 92 Miss.
837; *Kirby* v. *Bank*, 59 So. 10. Whatever is enough to

excite attention, or put a party on inquiry, is notice to everything to which such attention or inquiry might reasonably lead.'' *Parker* v. *Foy*, 43 Miss. 260.

Had Messrs, Carr & Ritchie, as representative of the appellees here, inquired of the appellant before they purchased the lands from J. H. Herrin, they could easily have ascertained from him that he had already rented the land for one year from Mr. Herrin and for the price of eight dollars per acre; and no doubt, he would have told them frankly that he intended to hold under this lease. Instead of doing this, without having said one word to the appellant, they allowed him to work the property for the entire year 1917, and when they called on him, for the rent, called on him under a note from J. H. Herrin.

No attempt was made to introduce Mr. Herrin as a witness on behalf of the appellees to deny that he had rented the place nor is any attempt made to show that the appellant in any way attempted to deceive the appellees. No effort has been made to collect the money from J. H. Herrin nor is it shown that he is insolvent. It is simply an effort on the part of the appellees to hold the appellant on a note given them by J. H. Herrin of which he was neither endorser nor had any knowledge that the note had been given,

''The general rule is well settled in England that a purchaser or encumberancer of an estate who knows or is properly informed that it is in the possession of a person other than the vendor or mortgagor with whom he is dealing is thereby charged with a constructive notice of all the interests, rights and equities which such possessor may have in the land. He is put upon an inquiry concerning the grounds and reasons of the stranger's occupation, and is presumed to have knowledge of all that he might have learned by means of any inquiry duly and reasonably prosecuted. If he neglects to make any inquiry, or to make it with due diligence,

the presumption and notice, of course, remain absolute. The same general rule, based upon the same motives and reasons, has been established in the United States by a very great number of decisions and judicial dicta." 2 Pomeroy's Equity Jurisprudence (3 Ed.), sec. 614, p. 1018. It is the settled rule in England that possession by a lessee is constructive notice to a purchaser not only of the tenants rights and interests directly growing out of or connected with the lease itself, but also of all rights and interests which he may have acquired by other and collateral agreements as, for example, from a contract to convey the land, or to renew the lease, and the like. This rule has also been adopted by American courts. It applies to a lessee, a sublessee, and a tenant from year to year." Sec. 625, 1047, 2 Pomeroy's Equity Jurisprudence, (3 Ed.).

It has been settled by numerous cases in this state commencing with *Dixon* v. *Lacoste,* 1 Sm. & M. 70, that the open possession and occupancy of land by the vendee is implied notice of his right. *Stovall* v. *Judah,* 74, Miss. 756, 67 Miss. 526.

The possession of land by a tenant or lessee is not only notice of all his rights and interests connected with or growing out of the tenancy itself or the lease, but is also notice of all interests acquired by collateral or subsequent agreements." *Cooks* v. *Jenkins,* 100 N. W. 82, 104 Am. St. Rep. 326; and see note to this case 104 Am. St. Rep. 348.

But possession of a tenant after the expiration of a term is not only notice of all his rights and equities growing out of the original lease, but also of such additional or different rights and equities as he acquires under a subsequent agreement." *Allen* v. *Gates,* 73 Vt. 222, 50 At. 1092; *Cunningham* v. *Pattee,* 91 Mass. 248.

Even if the appellees were entitled to recover rent for the premises from the appellant in an amount more than he agreed to pay J. H. Herrin, they could not

recover from the appellant more than a reasonable rent on the lands for the year 1917. It will be seen by reference to the record at page 46 that the appellant offered to introduce Mr. E. B. Johnson, Mr. Arthur Dugger and Mr. D. A. Mueller, to prove that eight dollars per acre was a reasonable rental for the year 1917 for the land in controversy. This evidence was rejected by the court and the appellees were allowed to recover in the exact amount of the notice given by J. H. Herrin. There was no privity of contract between the appellant and J. H. Herrin; and because Herrin gave the note for sixteen hundred dollars did not make it a reasonable rent.

On the whole, it is urged by the appellant that this cause should be reversed and judgment entered here for the amount of rent tendered to the appellees, being seven hundred and eighty-seven dollars and twenty cents which it was agreed was tendered in this cause and is still tendered and offered to be paid as shown by page 16 of the record, and judgment here be entered also for the costs as against the appellees.

*Oscar Johnston,* for appellee.

Herrin purchased a tract of land on September 18, 1916, and was to be given possession on January 1, 1917. At the time of the purchase the premises were in the possession of Frye, lessee from Herrin's vendor under a lease which was to expire on January 1, 1917, after purchasing, Herrin, by verbal contract. leased the premises to Frye for a period of one year commencing January, 1917, ending with December 31, 1917, for a rental of seven hundred and eighty-four dollars, or eight dollars per acre, Frye to come into possession under this contract January 1, 1917, or at the time that Herrin was entitled to possession under the terms of the conveyance from his vendor. In December, 1916, Herrin, ignoring

the alleged verbal contract between himself and Frye
and concealing same, sold the premises to Rose et als.,
and leased or rented the premises from Rose, evidencing
the rental by written contract and stipulating for a
rental of sixteen hundred dollars for which amount
Herrin gave Rose his note. Under the deed from
Herrin, Rose was to be given possession January 1, 1917,
upon which said date Herrin was also entitled to take
possession as the lessee of Rose et als. The vendee of
Herrin had no knowledge of the alleged trade between
Herrin and Frye. Frye was farming the premises and
to that extent occupied the premises under the terms
of the contract which was to expire January 1, 1917.
Herrin's vendees were non-residents of the state of
Mississippi, but were represented by W. A. Ritchie as
their agent. Their agent had no knowledge of the al-
leged contract between Frye and Herrin. Frye farmed
the premises in the year 1917, having been put in pos-
session on January 1 by J. H. Herrin who was, on that
date, the lessee of Rose.

Query; Was Frye the sub-lessee of the premises un-
der Herrin, lessee, and as such, liable to the lessors for
the full rent; or may Frye be treated as an original
lessee under Herrin as lessor, and if so, to what extent,
if at all, were Herrin's vendees charged with notice
of Frye's claim as lessee?

I have carefully and critically examined the authori-
ties cited by counsel representing the appellant and
shall discuss them only in so far as they bear upon the
question about which there is controversy. I do not
controvert the proposition that Herrin had a legal right
to make a verbal lease contract to the lands in contro-
versy in September, 1916, which contract was to take
effect January 1, 1917, and to cover the period of twelve
months beginning with January 1, 1917. As stated by
counsel for appellant, our court has frequently recog-
nized the right of a landowner to make a verbal lease

for a period of twelve months to begin *in futuro,* but in this connection the attention of the court is called to the fact that at the time of the making of the verbal contract between Herrin and Frye, Herrin was not, and had never been in possession, constructive or actual, of the premises on January 1, 1917. Hence at the time of the verbal agreement between him and Frye, Herrin had no right to the possession or to put Frye in possession. Frye was at that time in possession of the premises under the terms of his lease from Laughlan which lease, as has been seen, was to expire January 1, 1917. Prior to January and without ever having acquired a right of possession to the premises Herrin conveyed the premises to Rose obligating himself to put him in possession on January 1, 1917. Hence, when Frye's contract with Laughlan expired on the 1st day of January, 1917 Herrin, his lessor, was not in possession, was not the owner and had no right and no power to put another in possession of the premises. On the contrary; on the 1st day of January, 1917, the property passed into the hands of J. H. Herrin as lessee under the terms of his lease contract with Rose et als, and subject to liability for a rental of sixteen hundred dollars. If, therefore, Herrin gave possession of the premises to Frye on or after the 1st day of January, 1917, he necessarily could only do so as lessee himself giving to Frye rights as sub-lessee.

This brings us to the second question presented in the brief, namely, whether or not possession of a tract of land by a person holding under a contract or other valid authority is notice to the person dealing with the property of the claim of the occupant to the right which is to begin *in futuro* which does not arise out of the contract or instrument under which he holds possession and which confers no present right to the possession; or, to state the matter concretely, can Frye who, from September, 1916, until January, 1917, occupied the premises in question under a lease with Laughlan, set

up a verbal contract made with Laughlan's vendee, Herrin, which was to commence in January, 1917, against subsequent vendees of Herrin who purchased prior to the first day of January, 1917, as innocent purchasers for a valuable consideration with no knowledge of the claim of Frye? Counsel for appellant cite the case of *Dixon* v. *Lacoste*, 1 S. & M. 107, and *Bell* v. *Flaherty*, 45 Miss. 694, and sundry other cases, all of which upon examination, the court will find announced a well-known and uncontroverted proposition, namely, that possession by a person is evidence and notice of the existing rights of the possessor to the premises possessed. No one of the cases cited announces or sustains the proposition that occupancy of a tract of land is notice to the world that the occupant proposes at some distant time to claim that by virtue of some verbal agreement or some secret document he proposes to set up a new claim to the premises. When Rose purchased the property, Frye was occupying it under a contract. Under the numerous decisions, including those cited by appellant, the vendees, Rose et al., were charged with knowledge of the nature of Frye's occupancy; that is to say, of the fact that he was then under a contract with Laughlan which contract was to expire with December 31, 1916, and had this contract contained any option for extending the time or any provision for its renewal they would have been charged with this. In other words, they were charged with full knowledge of the terms and conditions of the instrument conferring upon Frye the right of occupancy, but we submit that there is no authority that goes so far as to hold that they were charged with knowledge of the fact that it was his purpose to claim in the future under a different sort of contract made with a person who was not in actual or constructive possession and whose right to possession in fact never came into actual existence for there was never a point of time at which Herrin could have put

Frye in possession as an original lessee of the premises. Counsel for appellant, in their brief, indulge in some criticism of Car & Ritchie agents for Rose et als., for not having gone to Frye and made some inquiry. Seemingly they overlook what our supreme court has had to say on this subject. The burden of establishing the rights of the occupant and to proving facts tantamount to knowledge of the condition of the occupancy is upon the occupant or one claiming under authority other than a recorded instrument. *Hiller & Co.* v. *Jones,* 66 Miss. 636.

Carr & Ritchie did all they were required to do. They searched the record and dealt with the record title in J. H. Herrin and were advised that Frye was in possession under a lease with Laughlan and that accordingly possession would be given them at the expiration of that lease, to wit: on the first day of January, 1917, and if Frye desired to protect himself against a sale of the premises by Herrin it was his duty to have had his contract reduced to writing and duly recorded in order that it might be notice to all persons dealing with the premises. Suppose Frye had not occupied the premises in 1916, but that while farming some other property near by he had gone to Herrin in September, 1916, and made a verbal lease, just such a lease as he claims to have made. The lease would have been entirely valid and as between Herrin and Frye, Frye might have enforced his rights in a proper forum, but with the terms of that verbal contract securely secreted in his own bosom had he sat quietly by while Herrin sold the premises to a third party whose deed of conveyance was duly recorded, then unquestionably Frye would have had no rights as against such vendees even though Herrin might himself have leased the premises from his vendees and then permitted Frye to go in possession. True it is that as between Frye and Herrin, Frye may have only been answerable for rents in accordance with his verbal contract, but as between Frye and Herrin's in-

nocent vendees the products raised upon the premises by Frye would stand liable for the entire rent contracted for by Herrin. How then is the situation changed by the mere fact that instead of farming another tract of land Frye was farming this particular tract. I submit that the mere fact that he happened to be farming this land under a lease contract with a former owner would not give him any higher rights, because, as stated, the fact that he farmed this land was merely notice to the vendees of the conditions under which he was then holding it.

By statute in this state all conveyances whatsoever of lands are void as against subsequent purchasers for a valuable consideration without notice unless acknowledged or proved and lodged with the clerk of the chancery court of the proper court to be recorded. Citing Miss. Code 1906; sections 27-87; Hemingway's Code, section 2291.

It is to avoid the effect of this very wise and salutary statute that counsel seeks, I believe, in vain to induce this court to hold that Frye's possession was notice of this rather vague and indefinite contract between Frye and Herrin.

Under our decisions a verbal contract for the leasing of lands for a period of one year to begin *in futuro* is valid and there is no limit placed upon the time at which the lease shall begin. To illustrate, Laughlan may have leased to Frye for a term of five years, the lease to expire January 1, 1922; then when Herrin acquired title in September, 1916, he might just as well by verbal lease have leased the premises to Frye for one year beginning January 1, 1922, for a rental of ten dollars, then later in that same year sold the property to Rose, subject to Frye's right as lessee under the terms of his written lease of five years, and if the contention of the appellant is correct when his written lease expired, Frye would have the right to set up a verbal

lease made four years previously between himself and the man who was never in possession and who only owned title for a few months as against a *bona-fide* vendee who purchased for a valuable consideration and without notice. Such a proposition appeals to me as most monstrous. Our courts and our legislature have gone a long way in an effort to protect persons dealing with land, the legislature requiring conveyances and instruments passing title or an interest in land for a longer period than one year to be in writing and providing that the failure to record any instrument affecting title to land should render such instrument void as against subsequent purchasers for value without notice, the only exception to this statute being that engrafted upon it by the courts, holding that a purchaser is charged with notice of the rights of the occupant. Certainly the court will not engraft a further exception upon the statute by now holding that the occupant may set up against a *bona-fide* purchaser for value without notice a contract not only not in writing, but under which, at the time of the purchase, he was not claiming to occupy. Again, let us suppose that Frye had, by verbal contract, assigned his lease to John Doe. Clearly, under the decisions of our court, Doe would not have acquired rights paramount to the rights of Herrin's vendees. Our court has held that the assignee of the owner of a lease should protect himself by having his lease acknowledged and recorded, stating "where he fails to do this his rights are always subject to that of a purchaser or mortgagee for value without notice." *Bank & Trust Co.* v. *Wallace,* 111 Miss. 62. In the case just cited the supreme court of Mississippi, through Justice SYKES, said: "To hold that a *bona-fide* mortgagee for value without notice is chargeable with unrecorded assignment of a lease would be, in our opinion, to open wide the door for fraud in transactions of this kind."

Had the lease contract between Laughlan and Frye been of record the situation would have been the same. Rose would have purchased with knowledge of it and would not have been put to the necessity of going to the occupant, Frye, then under a valid lease contract duly recorded to ascertain of him if he was going to claim any future interest in the property under the terms of some secret agreement between him (Frye) and Laughlan. Where would the matter end? At the expiration of the year 1917 Frye may still occupy the premises claiming that he had a secret agreement with Laughlan whereby he leased the premises from Laughlan for the year 1918. Likewise when 1918 expired he might claim the premises for 1919, setting up a verbal lease between himself and some predecessor of Laughlan. It will thus be seen how absurd it would be and to what complications it would lead to permit a tenant occupying premises to set up against vendees verbal contracts to begin *in futuro*. After citing and quoting from sections 27-87, Mississippi Code of 1906, our court holds:

"An examination of the above sections shows that it is the general scheme and purpose of our law relating to contracts with reference to land that they should be recorded in order to give notice to all parties dealing with these lands. That if they are not recorded, then no one is bound by any agreement not filed for record unless he has actual knowledge or constructive knowledge of the same. It is also the law that the evidence relating to constructive knowledge must be positive." *Bank & Trust Co.* v. *Wallace*, 111 Miss. 71.

I direct the special attention of the court to the case of *Bell* v. *Flaherty*, 43 Miss. 694, cited by counsel for appellant. The court in its opinion in this case cites and quotes from *Perkins* v. *Swank*, 43 Miss. 361; *Dixon* v. *Lacoste*, 1 S. & M. 107, all of these cases emphasizing my contention, namely, that to constitute constructive notice there must be actual possession under contract,

agreement to instrument as to which notice is sought to be given. For instance, in the Flaherty Case the court said:

"The jury were warranted to accept, as provided, the fact that Wm. M. Flaherty went into possession immediately after his purchase in 1859. His possession was notice of his title; that is to say, his possession was notice of the right under which he claims possession. In the *Perkins Case,* 43 Miss. 361, the court said: "Possession as a fact to put creditors and purchasers on inqury as to the nature and extent of the estate of the vendee and has the effect of charging with knowledge of his actual estate and title." Again in the Flaherty Case the court said: "Plaintiff then at the date of his judgment must be taken to have notice of the 'estate' of Wm. M. Flaherty; that is that he was purchaser holding under an equitable title with a right to legal title when he performed his covenant."

So here, Frye was in possession when Rose bought; that possession was the fact which put Rose upon notice of the actual estate and title of Frye. What was that estate and title? It was a lease contract between Frye and Laughlan to expire January 1, 1917. I submit that nothing more nor less can be made of it.

Possession, as has been said by our court, is a badge of ownership and evidence of a right. *Loughbridge & Bogan* v. *Bowland,* 52 Miss. 553, but in order that possession may have the effect of protecting the title under which it is held, it must be of that character which would arrest attention. The ceremony of livery of seizin was performed openly in the presence of freeholders for the purpose of attesting the act of entering possession. At an early date registration was adopted as a substitute for the purpose of conclusively imparting notice.

I again quote from the case last above cited: "Shortly after the passage of the registration law in England the

courts held, as within its reason and intendment that whatever communicated information to a creditor or purchaser of a prior conveyance bound his conscience and accomplished what the law designed. Possession was laid hold of as a circumstance from which notice may be inferred; but, like other inferences, it depends for its force on the nature of the fact from which it is deduced. The reason which underlies the doctrine is that it is a fraud, an act of *mala fides* for a creditor or purchaser. Who had knowledge of a prior sale and purchase to attempt to defeat the purchaser's right by getting his estate? Whenever it is sought to establish notice inferentially, the facts proved ought to be emphatic and distinct.''

Manifestly no sort of fraud may be charged against Rose et als. The occupancy of Frye at the time of the sundry transfers was in nowise hostile to their claims and nothing occurred which could possibly have arrested their attention on or put them upon the notice of the fact that he expected to set up a claim in the future to a right of possession other than that under which he was occupying the premises at the time of the purchase by Rose. It has been repeatedly held that possession or occupancy is notice of the occupant of his estate in fee.

The law is perfectly well settled, both in England and in this country, except perhaps in some of the New England states, that such possession under apparent claim of ownership is notice to the purchaser of whatever interest the person actually in possession has in the fee, whether such interest be legal or equitable in its nature.'' *Kirby* v. *Tallmadge,* 160 U. S. 379, 40 L. Ed. 463.

Under the authorities we submit that possession is only sufficient to give notice of the then existing interest claimed by the occupant in the fee; or the existing right of possession under which the property is held. Counsel

representing appellant as I have stated, cite several authorities sustaining the well-known and uncontroverted proposition that possession is notice of the existing right of the possessor, but this is not the case at bar. We are not favored with the citation of a single authority, text writer or court decision who has ever intimated that the possession of land by Frye under an existing lease would be notice to innocent purchasers for value of a right resting in parol and to accrue in the future. I feel safe in saying that counsel is unable to discover any such authority. On the contrary, the courts have distinctly held that such was not the case. A case directly in point has been decided by the supreme court of the state of Iowa in which that court very clearly announced the prevailing, and I might add, the almost universal rule as follows: *McCleerey* v. *Wakefield & Cooper,* 2 L. R. A. 529; *Red River Valley Land & Investment Company* v. *Smith,* 7 Ind. 236, 74 N. W. 194. The possession of land which is notice to a subsequent purchaser or encumbrancer thereof is one existing at the time of the purchase. *Bingham* v. *Kirkland,* 34 N. J. Eq. 229; *Finch* v. *Beal,* 68 Ga. 594. Likewise it has been held that possession of land by a third person which is consistent with the record title is presumed to be under such title and is not notice of outstanding or unrecorded equities. *Cook* v. *Jenkins,* 124 Iowa, 317, 100 N. W. 82, and when a person is in possession of land under some right which appears of record, or which is consistent with the record title his possession is not constructive notice of another or a different right but is referable to that right. *May* v. *Sturdivant,* 75 Iowa 116.

Possession of property can charge a person subsequently dealing with the title thereto only with the facts as then existing. *Davidson* v. *Porter,* 57 Ill. 300. For an exhaustive discussion of this entire subject-matter the court is referred to an elaborate note, appear-

ing in the 13th L. R. A. (N. S.) beginning on page 49 special attention being called to the specific case cited under the title "Rule that possession puts purchaser on inquiry," at page 55 et seq.

After a careful review of the authorities and of the evidence in this case, I am unable to discover a fact or circumstance which would lend color to the claim that Rose was seeking to perpetrate a fraud. Counsel comment on the fact that J. H. Herrin was not called to testify and that no effort was being made to collect from him. Under the laws applicable to Landlord and Tenant in Mississippi it was not necessary that an effort be made to collect from Herrin. By a statute a lien is given the landlord upon crops produced upon leased premises and the statutory proceeding indicating this was followed tho it may not be amiss to say that Herrin had become insolvent and at the time of the trial was unable to testify. This, however, may be *aliunde* the record.

Taking the case as a whole, recalling Frye's return to the state to correct his original testimony, noting the fact that Herrin, when he sold, rented the premises from his vendees and gave a note for more than twice the amount which Frye claims and, it appears to me, indicate a purpose on the part of Frye, rather than Rose, to perpetrate a fraud.

SYKES, J., delivered the opinion of the court.

The appellees, as landlords, attached several bales of cotton under section 2838 et seq., Code of 1906 (section 2336 et seq., Hemingway's Code), for the amount of one thousand, six hundred dollars rent claimed to be due them for the year 1917. This cotton was replevied by the appellant under section 2856 et seq., Code of 1906 (section 2354 et seq., Hemingway's Code). It was agreed that the cotton was raised on the land of ap-

pellees by the appellant during that year. The appellant claimed, however, that he only owed rent at the rate of eight dollars an acre for the land, which he had heretofore tendered the appellees, and which tender he made in open court. After the conclusion of the testimony a peremptory instruction was given in the circuit court in favor of the appellees, and judgment duly entered thereon, from which judgment this appeal is prosecuted.

The facts in the case are undisputed, and are briefly as follows:

A man by the name of Laughlan was the owner of ninety-eight and four-tenths acres of land in Coahoma county, and rented this land by written contract for the farming year 1916 to G. G. Frye, appellant in this case. This contract was not recorded, and ended December 31, 1916. Frye lived on an adjoining tract of land, and under this contract with Laughlan was put in and held possession of the land and cultivated it during the year 1916. On the 12th of September, 1916, Laughlan sold the land to Oscar Carr and W. A. Ritchie. Carr and Ritchie sold the land on September 20, 1916, to J. H. Herrin. Under Herrin's deed he was to be given possession January 1, 1917. After Herrin purchased the land, and some time during the month of September, 1916, he made a verbal contract with appellant, Frye, for the rent of this tract of land to Frye for the farming year 1917 for a rental of eight dollars an acre. On December 14, 1916, J. H. Herrin sold the land to the appellees. Herrin at the same time by written contract rented this land from appellees for the year 1917 for a rental of one thousand, six hundred dollars, for which he gave his note.

The appellees are nonresidents of the state of Mississippi, and their negotiations for the purchase of this land from Herrin were conducted through W. A. Ritchie, one of the vendors of this land to Herrin. All of the deeds above mentioned were duly recorded. Mr. Ritchie

testified that he knew the appellant, Frye, was in posses-
sion of this land at the time Carr and Ritchie pur-
chased it.   At the time of their purchase no inquiries
were made by the appellees or their agent of Frye
as to what right, title, or interest he claimed in the lands.
Frye continued to occupy and cultivate the lands during
the farming year 1917.   In this suit the appellees claim
that Frye is the sublessee of Herrin, who is the lessee
from the appellees, and is liable for the one thousand,
six hundred dollars rent Herrin agreed to pay appellees.
This in effect is what the lower court held.   It is the
contention of the appellant that he is only liable for the
eight dollars an acre, the amount the lands were rented
to him by Herrin.

The question to be decided is a narrow one, namely:
What notice are the appellees to be charged with because
of the possession of the appellant of this land at the time
appellees purchased it?   The appellees contend that
this notice is restricted to the title of appellant for the
farming year 1916, obtained by virtue of his unrecorded
contract with Laughlan; that any rights he may subse-
quently have acquired under Herrin were not being
exercised at that time, and could not be exercised until
January, 1917; that, at the time the contract was made
with Herrin, Herrin was not in possession of the land.
The appellant claims that his possession was not only
notice of his contract for the year 1916, but of every
other title or right of possession that he held at the
time appellees purchased the land.

It is unquestioned that at the time Herrin rented the
land to Frye for the farming year 1917 he had a legal
right to do so.   It also unquestioned that the oral con-
tract entered into between Herrin and Frye is a valid
and binding one.   *McCroy* v. *Toney*, 66 Miss. 233, 5 So.
392, 2 L. R. A. 847.   The right of a lessee in a case of
this kind has not heretofore been presented to this court.
The question of possession, however, under an unrecord-

ed instrument, and what notice the purchaser is to be charged with therefrom, has been repeatedly passed upon by this court. The rule is thus stated in the case of *Bell* v. *Flaherty,* 45 Miss. 694, quoting from *Perkins* v. *Swank et al.,* 43 Miss. 361:

"Possession is a fact to put creditors and purchasers on inquiry as to the nature and extent of the estate of the vendee, and has the effect of charging with knowledge of his actual estate and title"—citing *Dixon* v. *Lacoste,* 1 Smedes & M. 107.

In the case of *Bolton* v. *Roebuck,* 77 Miss. 710, 27 So. 630, the rule is announced that:

"The possession by the person who occupies land puts the whole world on notice of, and inquiry as to, the extent of his claim."

See, also *Railroad Co.* v. *Sanders,* 93 Miss. 107, 46 So. 241.

The possession of the appellant, Frye, was sufficient to put the appellees upon inquiry as to his title to the premises, and a failure upon the part of the appellees so to do charges them with notice of everything to which such an inquiry would reasonably have led. This inquiry would undoubtedly have led to a full disclosure of all rights appellant claimed—not only the right of possession for the year 1916, but also that for the year 1917. *Parker* v. *Foy,* 43 Miss. 260, 5 Am. Rep. 484; *Stovall* v. *Judah,* 74 Miss. 756, 21 So. 614; *Levy* v. *Holberg,* 67 Miss. 526; 7 So. 431.

This question is ably discussed in Pomeroy's Equity Jurisprudence, vol. 2. (3 Ed.), sections 614-616. In section 616, after stating that there is some disagreement among the American decisions concerning the question of what rights and interests held by the occupant his possession is a constructive notice of, and after stating that the rule in England is that the possession of a tenant is not only notice of all rights and interests connected with the tenancy, but is also notice of all interests ac-

quired by collateral and even subsequent agreements, and that this rule has been adopted by some of the American courts, which hold that a possession originally acquired by one right or in one manner is notice of all other rights subsequently and differently obtained and held by the occupant, unless there is something in the circumstances of the case which has actually misled the purchaser who is to be affected by the notice. In a note to this section this learned text-writer says:

"In my opinion, these decisions are much more in harmony with the general doctrine than those others which have speculated and drawn refined distinctions upon the amount of notice derived from the occupant's original right to the possession. The reason upon which the whole doctrine rests seems to be conclusive. The possession of a third person is said to put a purchaser upon inquiry, and he is charged with notice of all that he might have learned by a due and reasonable inquiry. Clearly a purchaser who is thus put upon inquiry is bound to inquire of the occupant with respect to every ground, source, and right, of his possession; anything short of this would clearly fail to be the 'due and reasonable inquiry.' "

The case of *Crooks* v. *Jenkins,* 124 Iowa, 317, 100 N. W. 82, 104 Am. St. Rep. 326, quotes with approval the above note from Mr. Pomeroy in a well-reasoned case. In *Finch* v. *Beal,* 68 Ga. 594, quoting from a previous opinion of that court, the rule is laid down that: "The actual possession of land is notice to all the world of whatever rights the occupant really has in the premises, and the vendor cannot convey to any other person without such person being affected with notice."

At the time of the appellees' purchase of this land the appellant had acquired by valid contract the right to the possession of the land for 1917, thereby extending his rightful possession during that year. There was no record title of appellant when appellees purchased. Ap-

pellees failed to make inquiry of appellant as to the nature, character, and extent of his rights in the land. Failing to do so they are charged with notice of what a reasonable inquiry of appellant would have ascertained and this inquiry would have disclosed, not only the lease from Laughlin, but also the lease from Herrin. This is a case where either the appellant or the appellees are to suffer for the bad faith of Herrin. The appellees, having failed to use diligence to ascertain under what title the appellant held, are therefore chargeable with notice of the 1917 lease.

The pleadings in the case show that the appellant tendered the rental of eight dollars an acre. He occupied the land under his contract of lease with Herrin, and not as a sublessee of Herrin. He is therefore only liable for this amount.

Judgment reversed, and judgment will be entered here in accordance with this opinion.

*Reversed, and judgment here.*